**MORSE–STARRETT PRODUCTS CO. et al.
v. STANDARD AMERICAN WINDOW
SAFETY DEVICE CO. et al.**

No. 7232.

Circuit Court of Appeals, Seventh Circuit.

Oct. 31, 1940.

Lee J. Gary, of Chicago, Ill., and Oscar A. Mellin, of Oakland, Cal., for appellants.

Max Richard Kraus and Samuel L. Steinberg, both of Chicago, Ill., for appellees.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

This appeal is from a decree dismissing plaintiffs' suit for infringement of the Steccone patent, Number 2,123,638, issued July 12, 1938, and disclosing a window squeegee. The District Court held the patent invalid by reason of anticipation or for want of patentable invention in view of the prior art. Accordingly the court rendered judgment for the defendants and the plaintiffs appealed therefrom.

A squeegee is a window-washing tool which combines a handle, a rubber wiping blade, and a metal holder for the blade. It is used by professional window washers in cleansing windows. First the window washer applies a cleaning fluid over the surface of the window and then he removes the fluid by using the squeegee. The device of the patent in suit shows a metal holder with handle projecting therefrom, a single flat rubber blade (having a sharp resilient wiping edge) removably anchored or gripped in the base of the metal holder, and one side of the metal holder curved outwardly to a point just short of the wiping edge of the blade. During use the blade is bent over the convex surface of the curved side of the holder and is there supported in proper wiping relation to the window surface.

The patentee claims the following invention:

"1. A squeegee comprising a resilient wiper blade, a member adapted to hold said blade, said member having a body portion which contains blade anchoring means and having a non-resilient portion extending from said body portion and terminating in a convex wiping edge supporting portion, the wiper blade being of elongated cross-section and attached at the anchoring portion and extending in the same general direction as the backing portion, and having a side wall facing said backing portion, the end portion of said wall being normally spaced from said supporting portion and so arranged that upon application of wiping force to the squeegee the outer portion of said wall will move into engagement with said convex portion and be limited in its movement thereby.

"2. A squeegee of the type defined in claim 1, wherein that portion of the backing member which extends from the body portion comprises a smoothly curved, convex surface, adapted to engage the wiper blade along its entire side wall and to have the curve of its face corresponding to the curve of the wiper blade when the latter is under a sufficient wiping pressure to bring the end portion of the wall into engagement with the supporting portion."

The plaintiff Morse-Starrett Products Company, licensee of the plaintiff Ettore Steccone (patentee), manufactured the patented device late in 1938 and within a period of ten months thereafter had sold over 12,000 items. Sales were promoted by submitting samples to big jobbers with the request that these samples be supplied to customers who would give the squeegee a fair trial. One of plaintiffs' witnesses testified that "once a window cleaner has used our tool, he is very reluctant to go back to the old type of tool." There is evidence however that the Steccone squeegee had not displaced other squeegees on the mar-

ket. The accused device appeared on the market at the end of the year 1938. The defendants admitted that they employed a diemaker to duplicate the patented squeegee, having been advised by patent counsel that such action would not infringe any patents. When asked on cross-examination why the Steccone device was selected for duplication, the witness (one of the defendants) answered that its "lighter weight" appealed to him.

At the trial the plaintiffs adduced evidence tending to show that the patented device in question was superior to the squeegees then on the market. For comparison they introduced in evidence a competing squeegee of a type sold on the market for a long period of time. This particular tool differed from the patented device in the following respects: (1) it was heavier; (2) its blade had more height, that is, it projected a greater distance from its anchored base in the holder; and (3) the immediate backing portion adjacent to the blade and terminating just short of the wiping edge of the blade, was made of hard but flexible rubber. ·

The plaintiffs' testimony then associated two primary disadvantages with the competing squeegee, namely, (1) because the backing portion is flexible the wiping edge of the blade wears unevenly and hence wears out rapidly, and (2) considerable experience on the part of the user is required before a uniform cleansing result is obtained. The plaintiffs' testimony concluded that the patented device eliminated these disadvantages and that this advance in the art was attributed to the unique method of supporting the blade during its use. As expressed by plaintiffs' expert witness, the "principal advantages of this squeegee lie in the curved backing for the rubber * * * the rubber is anchored at the bottom of the curve and extends in a cradle bend over this metal backing."

One of the defendants disputed the claimed superiority of the patented device. This witness had been in the cleaning business for 30 years and his partnership was then employing between 50 and 90 window washers. He stated that 65 percent of his employees preferred to use the competing squeegee and that the 35 percent of his employees who used the patented device did so "on account it is a little lighter." He concluded that there was no difference in utility between the two tools, that the two devices did "approximately the same" work

and that they both cleaned the windows effectively.

The defendants introduced in evidence prior art patents which disclosed combinations comprising the elements found in the Steccone patent, namely, (1) a rubber blade, (2) a metal holder, (3) a means for anchoring the blade and (4) a backing support portion. It is sufficient to name the Prowense patent, Number 1,533,944, issued April 14, 1925; and covering a window or windshield cleaner; the Anderson patent, Number 1,973,366, issued September 11, 1934, and covering a windshield wiper; the Lane patent, Number 948,631, issued February 8, 1910, and covering a window cleaner; the Brown patent, Number 592,076, issued October 19, 1897, covering a window cleaner; and the Bourke patent, Number 355,298, issued January 4, 1887, and covering a window cleaner. In the Prowense patent the extension of the blade is the same as it is in the Steccone patent. The Lane and Bourke patents provide for the adjustment of the height of the blade, that is, they provide for the moving in or out of the blade with respect to the curved backing portion. The Anderson, Lane and Brown patents disclose curved backing and the Anderson patent provides for a removable blade.

The plaintiffs' expert witness sought to distinguish the prior art structures by showing that the backing support in the Steccone patent served a "different purpose." He explained that the backing portion of the Prowense patent was not intended to support the rubber blade during use, whereas "On the Steccone patent the curve actually supports the rubber in a most efficient wiping position when it is in use." He stated that in the Anderson patent the backing portion served "an entirely different purpose again than the Steccone." As to the Lane patent it was explained that although the backing portion was "for reinforcing or stiffening the rubber while in use," the portion was curved outwardly only in order "to prevent cutting the rubber where it bends backward." The Bourke and Brown patents were not discussed by plaintiffs' expert witness.

Of the patents described above all except the Prowense patent were cited by the Patent Office in connection with the prosecution of the Steccone patent therein. The file wrapper in the record indicates that Steccone started with five claims in the Patent Office, claims describing the backing

support portion of the squeegee as being "curved away from said wiper portion in an arc corresponding to the natural curvature of said wiper portion when placed under working pressure, said curved side terminating just short of the working edge of said wiper portion." The examiner rejected this claim as being unpatentable over Anderson in view of Lane or Bourke, stating that the "exact point of termination of these supporting members is merely a matter of degree, any of which could terminate in any relationship to the wiping edge of the squeegee if so desired, without involving invention."

In this case no serious question is made regarding the issue of infringement. In effect the defendants admitted infringement and the point was not raised here. The only issue which we are called upon to decide, is whether the patent in suit is valid in view of the prior art patents. On this point the District Court held the Steccone patent invalid by reason of anticipation or for want of patentable invention in view of the prior art. The District Court also concluded that the plaintiffs had failed to prove the unfair competition cause of action alleged in the complaint. On this point which was not argued here, the court's conclusion was correct.

Combination patents disclosing a rubber blade, a metal holder and a metal support for the blade, are old in the art. Nor is the substitution of a removable blade or of a convex curved support in such a combination, new in the art. We observe that the Steccone patent relates to a combination of old elements. In particular Steccone directs his attention to the curved backing support and the proper relation of this element to the rubber blade. This emphasis as to these two elements is obvious from a reading of the specification and claims of his patent. Moreover, at the trial plaintiffs' expert witness discussed some of the prior art patents and he distinguished the Steccone patent on the ground that the backing support element of the prior art patents served an "entirely different purpose than the Steccone." He added that "On the Steccone patent the curve actually supports the rubber in a most efficient wiping position when it is in use."

If Steccone has added to the prior art that addition is confined to his emphasis relating to the support and blade elements. In this has Steccone discovered something unknown to, or not suggested by, the prior art patents? We think the answer is found in Bourke. The Bourke patent covered a window cleaner and disclosed the elements already described. He stated that the object of his device was to provide the holder "with a depending bearing-flange, to form a support for the cleaning-strip when pressure is brought against it" and that the support element "forms a support for the rubber * * * to give it the required rigidity when pressure is brought against it in cleaning the window."

Thus Bourke discloses the idea of a backing portion which like Steccone "actually supports the rubber * * * when it is in use" and its function is so stated in the patent. The same thing is true of the Brown patent which provides a backing portion curved in such a way that the rubber "may be brought into suitable relation with the surface to be cleaned," and of the Lane patent which shows backing "for reenforcing or stiffening the rubber while in use." It is true that Bourke does not claim a curved support but Brown does, and the Lane construction shows a curved portion. Of course Brown does not claim a convex curve but his concave curve serves the same function that the convex curve serves in the Steccone patent. Lane states that his curve serves to prevent the rubber from being cut as it bears against the curved portion, but it is obvious that in operation the curved portion in Lane serves the same purpose as it does in the Steccone patent. The Anderson construction shows two convex curved portions and when the device is in action they support the blade.

In view of these prior art patents we are compelled to disagree with counsel that the patented construction is "unique" or that the patented device discloses a "novel support by the curved backing and the relationship of the supporting backing to the wiping edge." Steccone's claim to patentable invention lies in his arrangement of the backing and blade elements, yet this contribution adds little to what Bourke and Brown taught the art. Perhaps his particular construction, in terminating the support member at a certain point in its relationship to the wiping edge of the blade, constituted a more perfect tool than the competing tools on the market. Certainly this achievement is that of the artisan rather than that of the inventor. The possibility of greater excellence in such arrangement or adjustment, were legally embraced in the prior art patents.

Nor are we convinced on this record that the Steccone squeegee proved itself singularly beneficial to the class of window washers. There is a conflict in the testimony as to the superiority in utility claimed for Steccone over its competing squeegees, there is no evidence that Steccone supplied a long felt want, and there is no evidence that he succeeded in accomplishing a novel result where others had failed. The most that can be said is that according to the plaintiffs' testimony, Steccone supplied a more perfect tool. But we are satisfied that he merely carried forward the original thought expressed by Bourke and Brown. If he added to what they taught it was a change in degree only. Steccone can not dispute the proposition that his patent describes a structure which does the same thing (perhaps with better results) in the same way by substantially the same means, as the devices described in the prior art patents named herein.

The judgment is affirmed.